UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI HUSSEIN BAZZI,                               Case No. 20-10963

               Plaintiff,          Nancy G. Edmunds
v.                                               United States District Judge

COMMISSIONER OF SOCIAL                           Curtis Ivy, Jr.
SECURITY,                                        United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 18)**

Plaintiff Ali Hussein Bazzi ("Bazzi") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 15), the Commissioner's cross-motion for summary judgment (ECF No. 18), Plaintiff's reply (ECF No. 19) and the administrative record (ECF No. 12).[1]

---

[1] References to the administrative record are identified as "Tr."

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**
Plaintiff's motion for summary judgment (ECF No. 15), **GRANT** Defendant's
motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner's
decision.

## I.    DISCUSSION

### A.    Background and Administrative History

Plaintiff alleges his disability began on January 1, 2016, at the age of 35.
(Tr. 336, 338).  He filed an application for disability insurance benefits on
February 19, 2016 (Tr. 336-37) and an application for supplemental security
income on February 26, 2016 (Tr. 338-39).   In his disability report, he listed a
number of ailments which negatively impacted his ability to work.  (Tr. 397).  The
ailments included: arm/elbow pain, depression, acid reflux, cholesterol, and
headaches/migraine. (*Id*.).  His applications were denied on July 12, 2016. (Tr.
155-59).

Following denial of his applications, Plaintiff requested a hearing by an
Administrative Law Judge ("ALJ").  On November 15, 2017, ALJ Lauren G.
Burstein held a hearing, at which Plaintiff appeared, with counsel, and testified.
(Tr. 136).  On March 27, 2018, ALJ Burstein issued an opinion, which determined
that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr.
136-44).  On appeal from that decision, the Appeals Council remanded the case

back to the ALJ to resolve a conflict between the vocational expert's testimony and information in the Dictionary of Occupational Titles, and to address evidence submitted after the hearing.  (Tr. 151-53).

Plaintiff appeared at a subsequent hearing before ALJ Burstein on February 20, 2019.  Both Plaintiff and vocational expert Don. K. Harrison, Ph.D., testified.  (Tr. 43).  On April 3, 2019, ALJ Burstein issued another unfavorable decision denying Plaintiff disability benefits.  (Tr. 15-25).  Plaintiff requested review by the Appeals Council, however, the Appeals Council denied the request.  (Tr. 1-5).  Thus, ALJ Burstein's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on April 19, 2020.

### B.    Plaintiff's Medical History

Plaintiff's argument on appeal before this Court is directed solely at the ALJ's consideration of his mental impairments; he made no argument with regard to his physical impairments.  Therefore, the undersigned will address Plaintiff's medical history as it relates to his mental impairments.

On October 12, 2015, Plaintiff presented to his primary care physician, Dr. Irene Signori, for an initial visit.  He reported "anxious/fearful thoughts, decreased need for sleep, depressed mood and difficulty concentrating."  (Tr. 521).  Plaintiff denied compulsive thoughts, difficulty falling and staying asleep, diminished interest or pleasure, paranoia, poor judgment, racing thoughts, restlessness, or

thoughts of suicide. (Tr. 521-22). On objective examination, Dr. Signori indicated Plaintiff was oriented to time, place, person, and situation; he had normal mood and affect; and he had normal insight and judgment. (Tr. 523). Dr. Signori assessed anxiety disorder, unspecified, for which she prescribed Sertraline. (Tr. 524). Plaintiff presented to Dr. Signori again on January 7, 2016. This time, Plaintiff reported no anxiety, depression, or insomnia. (Tr. 529). The objective psychiatric examination was normal, including appropriate mood and affect. (Tr. 531). Dr. Signori continued Plaintiff on anxiety medication. (Tr. 532).

On November 9, 2015, Plaintiff reported to orthopedic specialist Dr. Rakesh Ramakrishnan that he suffered from a history of depression, nervousness, and mood change. (Tr. 604). Dr. Ramakrishnan did not provide any objective findings related to Plaintiff's mental state.

On June 11, 2016, Plaintiff underwent a psychiatric consultative examination with Dr. Ibrahim Youssef. Plaintiff reported to Dr. Youssef that his problems began following an injury he sustained to his elbow in 2014. According to Plaintiff, he was unable to work as much after experiencing the injury. Because of the injury, Plaintiff complained he suffered from chronic pain and earned less income since he could only manage to work 20 hours per week. Plaintiff reported he was not sleeping well, was socially withdrawn, and was unable to enjoy his life.

4

(Tr. 551). Plaintiff stated he either works or is home watching television, which makes him more depressed. (Tr. 552).

Dr. Youssef found Plaintiff to be dysphoric and anxious during the interview. Although Plaintiff was "pleasant and insightful," he had no motivation and had "zero" self-esteem. Plaintiff's affect was constricted, he became tearful at times during the interview, and he was scared for the future. Plaintiff's stream of mental activity was spontaneous, logical, and coherent; there were no thought disturbances. On testing, Plaintiff was able to repeat 5 digits forward and 3 digits backward, could remember 2/3 objects after three minutes, and knew his birthdate. Plaintiff's formal and operational judgment were "excellent." Dr. Youssef diagnosed "major depressive disorder, single episode, moderate to severe." (Tr. 552). Plaintiff's prognosis was "[l]ess optimistic as the pain continues and his ability to work is limited." (Tr. 553).

Plaintiff presented to the emergency department for dizziness on June 23, 2016. Among the findings on objective physical examination were normal mood and affect, normal behavior, and normal thought content. (Tr. 567).

Dr. Rose Moten provided a consultative psychological opinion after reviewing the record, dated July 11, 2016. Dr. Moten analyzed the "B" criteria under Listing 12.04 (Affective Disorders) based on her review of the record. She concluded Plaintiff had mild restriction in activities of daily living, mild

5

difficulties in social functioning, and moderate difficulties in maintaining

concentration, persistence, or pace.  (Tr. 111).  Dr. Moten explained Plaintiff had

the

> capacity for understanding, remembering, following
> instructions, sustaining attention and concentrating all
> appear adequate in development.  [Plaintiff] is capable of
> carrying out simple work like tasks with reasonable
> persistence/pace and to respond appropriately to brief and
> superficial contact with coworkers and supervisors as
> well as tolerate stress and pressures typically found in an
> entry level workplace.

(Tr. 111).  Dr. Moten further concluded Plaintiff had no significant limitation in

the ability to remember locations and work-like procedures or to understand and

remember very short and simple instructions.  However, she found Plaintiff

moderately limited in the ability to understand and remember detailed instructions,

but not marked limitation in this area.  (Tr. 114).

On October 8, 2018, Plaintiff treated with Dr. Mohamad Khansa at Insight

Orthopedic Specialists.  Plaintiff denied problems with memory, thinking, and

depression.  (Tr. 624).  Dr. Khansa did not provide any objective notes on

Plaintiff's mental status at that examination.

### C.    Plaintiff's Hearing Testimony

Plaintiff testified he could not work full-time because of the pain in his left

elbow.  He stated he had zero functioning in the left hand/arm.  He ingests

medication for muscle and nerve pain that limits his ability to work as it causes

him to feel dizzy and tired.  (Tr. 51).  He takes his medication prior to work each

day.  (Tr. 52).  When asked if he had any other limitations, Plaintiff responded,

"No, Your Honor."  (Tr. 53; *see also* Tr. 60-61).  He also testified if he did not take

Cymbalta and Xanax at night prior to retiring for the evening, he would be unable

to sleep.  (Tr. 56-57).  The Xanax helps him "sleep and relax."  (Tr. 59).  The

Cymbalta helps with his pain and depression; he "feel[s] so much better on it."

(*Id.*).

### D.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 1, 2016, the alleged onset date, despite his

part-time work.  (Tr. 17). At **Step 2**, the ALJ found that Plaintiff had the following

severe impairments: status-post fracture of radial head; radioulnar stenosis; and

neuropathy.  (Tr. 18-19).  The ALJ found Plaintiff's anxiety was not a severe

impairment.  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (Tr. 19-20).  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

determined that Plaintiff had the RFC:

> to perform light work . . . except . . . [Plaintiff] can lift,
> carry, push or pull 15 pounds with the right (dominant)
> upper extremity, only; he cannot use his left upper
> extremity. He cannot climb ladders or crawl. But he can
> stand, sit, or walk at least 8 hours a day.

(Tr. 20-22). At **Step 4**, the ALJ determined Plaintiff was unable to perform any

past relevant work. (Tr. 23). At **Step 5**, considering Plaintiff's age, education,

work experience, and RFC, the ALJ determined there were jobs that exist in

significant numbers in the national economy that Plaintiff could perform,

specifically, surveillance system monitor. (Tr. 24). The ALJ therefore concluded

that Plaintiff had not been under a disability, as defined in the Social Security Act,

since January 1, 2016, the alleged onset date. (Tr. 25).

### E. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[3] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

### F. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### G.     Analysis

Plaintiff's arguments are entirely directed at the ALJ's consideration of his mental impairments.  Plaintiff argues (1) the ALJ did not properly evaluate the two psychological consultative opinions in the record and (2) the ALJ erred when she did not include any mental limitations in the RFC.

### 1.     Consideration of Opinion Evidence

Plaintiff argues the ALJ failed to state what weight, if any, she assigned Dr. Youssef's medical opinion.  Plaintiff asserts the failure to weigh the opinion was reversible error.  (ECF No. 15, PageID.694-96).  Regarding State agency reviewing psychologist Dr. Moten's opinion, Plaintiff argues the ALJ did not cite the record or compare Dr. Moten's opinion with treatment notes from Dr. Signori when the ALJ gave Dr. Moten's opinion little weight.  Because the ALJ did not cite any record evidence in weighing Dr. Moten's opinion, Plaintiff maintains the ALJ failed to draw an "accurate and logical bridge" between the evidence and her decision.  (*Id.* at PageID.697).  Plaintiff accuses the ALJ of "circumvent[ing]" the opinions of Drs. Youssef and Moten and playing doctor.  (*Id.* at PageID.698).

The Commissioner argues the ALJ properly and sufficiently evaluated the two consultative opinions—the ALJ gave both opinions limited weight after discussing Plaintiff's mental limitations and the two opinions.  The Commissioner maintains the ALJ's conclusion is supported by the record.  According to the

Commissioner, Dr. Youssef's opinion was not entitled to more weight because it is inconsistent with Dr. Youssef's own findings and with the record evidence, and Dr. Youssef did not set forth any functional limitations resulting from a mental impairment. (ECF No. 18, PageID.716-17). The Commissioner contends the ALJ adequately supported the decision to give Dr. Moten's opinion limited weight. (*Id.* at PageID.719).

In the view of the undersigned, there is no reversible error in the ALJ's treatment of the opinions.

In evaluating a claimant's case, the ALJ must consider all medical opinions in the record, including those from consultative sources such as Drs. Youssef and Moten. 20 C.F.R. §§ 416.927(c), 404.1527. The regulations direct the ALJ to consider a number of factors when considering a medical opinion, including the treatment relationship and the supportability and consistency of the opinion with the other medical evidence. *Id.*; *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836-37 (6th Cir. 2016). The opinions of consultative examiners should be evaluated against the enumerated factors in 20 C.F.R. §§ 404.1527(c), 416.927(c)(1)-(6). These factors are: (1) the length of the treatment relationship and frequency of examinations; (2) nature and extent of the treatment relationship; (3) the relevant evidence that the treating physician relies upon; (4) the consistency of the opinion with the record as a whole; and (5) specialization of the treating physician.

After discussing Plaintiff's anxiety and related statements contained in his function report, the ALJ evaluated both Dr. Youssef's and Dr. Moten's consultative opinions, as follows:

> Claimant underwent a consultative psychiatric examination at the request of the state agency in June 2016. Claimant complained of anxiety and depression symptoms since fracturing his elbow and largely due to pain and inability to work as he had in the past. Claimant works 20 hours per week, and otherwise spends his time at home watching television. Claimant reported low self-esteem, lack of motivation, and poor sleep. The MD examiner [Dr. Youssef] noted claimant's constricted affect and occasional tearfulness. Claimant was spontaneous, logical and coherent. Claimant was able to recall two of three objects after a delay. Claimant repeated five digits forward and three backward. Claimant demonstrated "excellent" formal and operational judgment. The examiner diagnosed major depressive disorder.

> An assessment of claimant's mental functioning dated July 11, 2017 was prepared at the request of the state agency by non-examining professional Rose Moten, PhD. Based on a review of the claimant's records, Dr. Moten opined that claimant's affective disorder caused mild restrictions with activities of daily living and social functioning and moderate difficulties with maintaining concentration, persistence or pace. I gave limited weight to the MD psychiatric examiner's report [Dr. Youssef's report] and to Dr. Moten's opinions. Dr. Moten did not have the benefit of examining claimant. Neither claimant's treatment documentation nor the record as a whole supports finding greater than mild functional limitations arising from claimant's anxiety. These affect only the domain of concentrating, persisting or maintaining pace.

(Tr. 19) (internal record citations omitted).

Contrary to Plaintiff's position, the ALJ clearly stated the weight given to the opinions of *both* Drs. Youssef and Moten. However, Plaintiff is correct that the ALJ did not clearly state her reasons for discounting Dr. Youssef's opinion and did not cite to the record in her explanation for giving Dr. Moten's opinion limited weight. To the extent there is any error here, the error is harmless.

a.  Dr. Youssef's Opinion

Although Dr. Youssef's opinion is a medical opinion as that term is defined in the regulations, Dr. Youssef did not opine on any functional limitations. Thus, there was limited information for the ALJ to evaluate. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, *what you can still do despite impairment(s), and your physical or mental restrictions*." 20 C.F.R. § 404.1527(a)(1) (emphasis added). Dr. Youssef provided a diagnosis (moderate to severe major depressive disorder) and a prognosis ("[l]ess optimistic as the pain continues and his ability to work is limited."). (Tr. 553). Nonetheless, Dr. Youssef did not provide an opinion on what Plaintiff could still do despite his impairment or any mental restrictions to account for limitations caused by the impairment. "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."

*Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014); *Townsend v. Astrue*, 2013 WL 687042, at *5 (D. Or. Feb. 25, 2013) (failure to discuss a diagnosis is error, but harmless where record does not reveal any limitations due to the diagnosed condition).  Even if the ALJ had accepted Dr. Youssef's opinion, there would be no corresponding functional limitations to include in the RFC because Dr. Youssef did not opine on any limitations.  The ALJ cannot "play doctor" and extrapolate limitations from Dr. Youssef's testing results and diagnosis.  *See Ali v. Comm'r of Soc. Sec.*, No. 15-14483, 2017 WL 726665, at *11 (E.D. Mich. Jan. 20, 2017), *report and recommendation adopted*, No. 15-14483, 2017 WL 712899 (E.D. Mich. Feb. 23, 2017) ("Courts in this circuit have regularly noted that, while it is for the ALJ to weigh the medical evidence, ALJs are not qualified to interpret raw medical data, and may not 'play doctor.'").  Indeed, Plaintiff himself did not suggest what functional limitations the ALJ should have adopted from Dr. Youssef's opinion.[4]  Consequently, the failure to provide reasons for discounting Dr. Youssef's opinion is harmless.  *See Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) ("[I]f the refusal to even

---

[4] Plaintiff did suggest Dr. Youssef's findings on objective testing "provided insights into areas where Bazzi would have mental restrictions," such as memory and emotional reaction. (ECF No. 15, PageID.695).  It is not at all clear whatever "insights" could be drawn from testing which would be in Plaintiff's favor—testing did not reveal any obvious limitations.  For instance, Plaintiff was able to repeat 5 digits forward and 3 digits backward, could remember 2/3 objects after three minutes, and could remember his birthdate.  (Tr. 552).  There is no obvious mental functional limitation that could be drawn from these memory testing results.

acknowledge the opinion of a treating physician was harmless error . . ., then the

ALJ's failure in the present case to discuss thoroughly the opinion of a consultative

examiner does not warrant reversal.").

### b.    Dr. Moten's Opinion

Plaintiff also takes issue with the fact that the ALJ did not cite to the record

where she discounted Dr. Moten's opinion and did not compare Dr. Moten's

opinion with treatment notes from Dr. Signori.  Plaintiff's argument is, in essence,

the ALJ did not properly state reasons to discount the opinion, not that the opinion

should have been given greater weight.  (ECF No. 15, PageID.696-98).

Here, as above, any error in the ALJ's treatment of Dr. Moten's opinion is

harmless.  The ALJ provided reasons for her decision: Dr. Moten did not examine

Plaintiff, and Plaintiff's treatment and the record do not support greater than mild

limitations arising from his mental impairments.  (Tr. 19).  This explanation is

sufficient to meet the articulation requirements for evaluating opinion evidence.

More specifically, the ALJ noted the length of the examining and treatment

relationship (non-existent), the ALJ implicitly recognized Dr. Moten's

specialization as a mental health professional (the ALJ referred to Dr. Moten as

"professional Rose Moten, PhD." (Tr. 19)), and the ALJ stated the opinion was

inconsistent with the record as a whole, and hence not supported by the record.

*See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(1)-(6).  The ALJ thus evaluated the opinion against the requisite factors.

Further, the decision to discount the opinion is supported by substantial evidence.  As the discussion of the medical evidence above demonstrates, Plaintiff's treatment notes are rather benign with regard to his mental impairments. I will briefly recount those treatment notes here.[5]  On objective examination, where Plaintiff's physicians evaluated mental status, the physicians found him to have normal mood and affect and normal thought content or judgment, including Dr. Signori who diagnosed anxiety.  (Tr. 523, 531, 567).  Dr. Youssef, the consultative examining psychiatrist whose opinion is discussed above found Plaintiff to be anxious and sometimes tearful during the interview.  (Tr. 552).  However, Plaintiff's thought content and judgment were normal.  (Tr. 552-53).  Further, on objective testing, Plaintiff was able to repeat 5 digits forward and 3 digits backward, could remember 2/3 objects after three minutes, and knew his birthdate.

---

[5] The distinction between Plaintiff's subjective statements to his doctors and his doctors' objective findings is important.  At times, Plaintiff pointed to his subjective statements of depression and anxiety as evidence in support of Dr. Moten's opinion.  (*See* ECF No. 15, PageID.697) (citing Tr. 521-22).  Statements recorded under "Review of Systems" or "History of Present Illness" are a description of Plaintiff's reports and are not objective findings regarding Plaintiff's impairments or limitations.  *Daniels v. Comm'r of Soc. Sec.*, 2018 WL 5118595, at *7 (E.D. Mich. July 31, 2018) (quoting *McCready v. Comm'r of Soc. Sec.*, No. 10-13893, 2012 WL 1060088, at *8 (E.D. Mich. Mar. 2, 2012)).  The ALJ found Plaintiff's subjective statements "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 21). Plaintiff did not challenge that determination.  Moreover, disability is established by objective medical findings, not subjective complaints.

(Tr. 552). These findings do not, by themselves, demonstrate functional limitations that would preclude Plaintiff from performing light work as described in the RFC.

In addition to the objective findings are Plaintiff's subjective statements to his doctors regarding his mental status. His statements are not consistent. At his initial visit with primary care physician Dr. Signori on October 12, 2015, Plaintiff complained of being anxious and depressed. (Tr. 521-22). At a visit with Dr. Signori on January 7, 2016, Plaintiff reported *no* anxiety, depression, or insomnia. (Tr. 529). On November 9, 2015, Plaintiff reported a history of depression, nervousness, and mood change to his orthopedic specialist Dr. Ramakrishnan (Tr. 604), but with orthopedic specialist Dt. Khansa in October 2018, he denied depression and problems with memory and thinking (Tr. 624). Further, as the ALJ noted, despite his impairments Plaintiff was able to drive a car, watch television, and play games on his phone. Plaintiff was also able to perform his job as a cashier for 20 hours per week—work that presumably regularly required Plaintiff to maintain concentration, persistence, and pace throughout each shift. (Tr. 18, 415). In short, Plaintiff's subjective statements regarding his mental status over the years have been inconsistent.

The ALJ cited and discussed this evidence which is at odds with moderate limitation in concentration, persistence, and pace. At Step Two, the portion of the

decision where the ALJ weighed the opinions, the ALJ cited Plaintiff's function

report and Dr. Moten's opinion.  (Tr. 18-19).  Elsewhere in the decision, the ALJ

cited and discussed the treatment notes on Plaintiff's physical impairments.  Those

treatment notes include Plaintiff's contradictory complaints of anxiety or

depression and statements that he did not experience anxiety or depression.  The

treatment notes also include physicians' objective findings on Plaintiff's mental

status.  (Tr. 20-23).  The ALJ also specifically noted Plaintiff denied depression,

memory problems, or difficulty thinking on October 8, 2018, during an orthopedic

consultation.  (Tr. 22).  The fact the ALJ did not discuss *all* the evidence in the

decision is not error.  It has been clearly established "an ALJ can consider all

evidence without directly addressing in his written decision every piece of

evidence submitted by a party."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x

496, 508 (6th Cir. 2006) (internal quotations omitted).  Further, the ALJ's decision

is to be read as a whole; the ALJ is not required to restate factual analyses

throughout the decision.  *Norris v. Comm'r of Soc. Sec.*, 461 F. Appx. 433, 440

(6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its

determination as a whole, it satisfies the necessary requirements to survive

this court's review"); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir.

2004) ("[I]t is proper to read the ALJ's decision as a whole . . . it would be a

needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision").

The objective treatment notes and inconsistent reports of depression and anxiety do not suggest more than mild functional limitation in maintaining concentration, persistence, and pace, contrary to Dr. Moten's opinion.  Indeed, the treatment notes do not suggest any functional limitation caused by mental impairments.  The existence of the diagnoses of anxiety and depression and prescribed medication to treat the conditions do not translate into functional limitations.  For this reason, the undersigned suggests the ALJ's weight determination is supported by substantial evidence.

2.    RFC Determination

Plaintiff argues this case must be remanded because the ALJ failed to consider his non-severe depression and anxiety after Step Two of the sequential analysis.  (ECF No. 15, PageID.698-700).  The Commissioner argues remand is not necessary because the ALJ considered Plaintiff's mental status findings from October 2018 and Plaintiff's hearing testimony that he was primarily disabled due to his left upper extremity, not any mental impairments, in the RFC analysis.  (ECF No. 18, PageID.721-22).

Where, as here, the ALJ finds at Step Two that a claimant suffers from at least one severe impairment, the ALJ is required to consider the limiting effects of

20

all impairments—including limitations resulting from non-severe impairments—when determining the claimant's RFC.  *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009) (holding that, "[o]nce one severe impairment is found, the combined effect of all impairments *must be considered*, even if other impairments would not be severe") (emphasis added); *Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805 (S.D. Ohio 2015); 20 C.F.R. § 404.1545(e).  "[T]o the extent an ALJ determines that an identified impairment, severe or non-severe, does not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'"  *Katona v. Comm'r of Soc. Sec.*, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (Goldsmith, J.) (quoting *Hicks v. Comm'r of Soc. Sec.*, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013)).

It is the purpose of each step in the sequential analysis that informs the distinction between the required analyses at each step.  At Step Two, the ALJ considers whether the claimant's medically determinable impairments are severe or non-severe.  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).  Although a non-severe impairment may not significantly limit a claimant's ability to work, it may still impose some type of work limitations, either singly or in combination with the claimant's other impairments. *Katona*, 2015 WL 871617, at *6.  In assessing a claimant's RFC, the ALJ

21

determines the most the claimant can do in a work setting despite his or her

physical and/or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  "[A]

Step Two analysis is distinct from the ALJ's obligation to consider the impact of

Plaintiff's non-severe impairments in addition to and in conjunction with

Plaintiff's severe impairments in assessing Plaintiff's RFC."  *Garcia*, 105 F. Supp.

3d at 811 (quoting *Singleton v. Comm'r of Soc. Sec.*, 2015 WL 2381162, at *3

(S.D. Ohio May 19, 2015)).

Here, at Step Two, the ALJ found Plaintiff's status-post fracture of radial

head, radioulnar stenosis, and neuropathy to be severe impairments, but found

Plaintiff's anxiety to be a non-severe impairment.[6]  (Tr. 18).  In making that

finding, the ALJ considered the "paragraph B" criteria in the disability regulations

for evaluating mental functioning under the Listing of Impairments.  She

concluded Plaintiff had no significant limitation in understanding, remembering, or

applying information; in interacting with others; and in adapting and managing

oneself.  The ALJ found only mild limitation in concentrating, persisting, and

maintaining pace.  The ALJ discussed statements Plaintiff made in his Adult

Function Report, his daily activities including driving and working part-time as a

---

[6] Since the ALJ also discussed Plaintiff's depression in the Step Two analysis, it is clear the ALJ also considered depression to be a non-severe impairment.

cashier, and the two consultative psychological opinions in the record.  (Tr. 18-19).
The ALJ gave limited weight to both opinions, discussed above.

The ALJ's analysis at Step Two was thorough.  At Step Three, the ALJ
made no mention of a mental impairment.  (Tr. 19-20).  The ALJ then assessed an
RFC that did not include any mental limitations.  (Tr. 20).  In her RFC analysis, the
ALJ discussed Plaintiff's hearing testimony as it related to his physical
impairments.  (Tr. 20).  The ALJ concluded Plaintiff's "statements concerning the
intensity, persistence and limiting effects of [his] symptoms are not entirely
consistent with the medical evidence and other evidence."  (Tr. 21).  The ALJ then
discussed treatment records as they related to the physical impairments and the fact
that Plaintiff continued to work his part-time job as a cashier.  (Tr. 21-22).  The
ALJ did not expressly mention a mental impairment until near the end of the
analysis.  She noted Plaintiff "denied depression, memory problems or difficulty
thinking[]" to his orthopedic specialist on October 8, 2018.  (Tr. 22).

It is true, as the Commissioner points out, mild impairments need not be
included in the RFC.  *Shamsud-Din v. Comm'r of Soc. Sec.*, 2017 WL 3574694, at
*8 (E.D. Mich. July 24, 2017).  Nevertheless, an ALJ's failure to explain how a
claimant's mild psychological limitations affect the RFC assessment may
constitute reversible error where the ALJ makes no mention of the claimant's

mental impairment in the RFC analysis.  *Id.* (citing *Katona*, 2015 WL 871617, at *5-7); *Garcia*, 105 F. Supp. 3d 805.

However, unlike in *Katona* and *Garcia*, the ALJ did not completely fail to mention Plaintiff's non-severe mental impairments.  Rather, the ALJ expressly mentioned Plaintiff's depression in the RFC analysis.  Specifically, the ALJ mentioned Plaintiff denied depression, memory problems, and difficulty thinking on October 8, 2018.  The undersigned notes depression, memory problems, and difficulty thinking are directly related to maintaining concentration, persistence, and pace.  Thus, by mentioning Plaintiff's denial of these issues, the ALJ indicated little or no functional limitation in concentration, persistence, and pace.  The ALJ also discussed Plaintiff's hearing testimony that he was unable to work full-time because of issues with his upper extremities.  At one point, after discussing those issues, Plaintiff's attorney specifically asked if he had any other limitations.  Plaintiff replied "no;" essentially, Plaintiff testified he was not limited by a mental impairment.  (Tr. 61).

The ALJ also thoroughly discussed the evidence on physical impairments found in many of the treatment notes in the record.  It is in those records where Plaintiff's doctors noted Plaintiff's complaints of anxiety or depression and his anxiety diagnosis, in addition to discussion of Plaintiff's physical impairments.  (Tr. 21-22).  For example, the ALJ discussed Plaintiff's initial visit with Dr.

Signori in October 2015.  It was at this visit Dr. Signori diagnosed anxiety and

prescribed medication to treat anxiety, but also found Plaintiff to have normal

mood and affect.  (Tr. 520-23).  The ALJ also discussed Plaintiff's treatment with

orthopedist Dr. Ramakrishnan in November 2015, where Plaintiff reported a

history of depression, nervousness, and mood change.  (Tr. 604).  The ALJ also

cited records indicating Plaintiff denied mental impairments.  The undersigned

acknowledges that, although the ALJ is required to explain why non-severe

impairments did not result in functional limitations, there is no requirement that the

ALJ discuss every piece of evidence in the administrative record.  "An ALJ can

consider all the evidence without directly addressing in his written decision every

piece of evidence submitted by a party." *Kornecky*, 167 F. App'x at 508.  The

ALJ's discussion of portions of treatment notes is sufficient to infer the ALJ

considered the portions she did not expressly discuss.

Additionally, at Step Two, the ALJ acknowledged the distinction between

the analyses at Step Two and evaluating RFC:

> The limitations identified in the "paragraph B" criteria
> are not a residual functional capacity assessment but are
> used to rate the severity of mental impairments at steps 2
> and 3 of thee sequential evaluation process.  The mental
> [RFC] assessment used at steps 4 and 5 . . . requires a
> more detailed assessment by itemizing various functions
> contained in the broad categories found in paragraph B of
> the adult mental disorders listings in 12.00 of the Listing
> of Impairments (SSR 96–8p).  *Therefore, the following*

> *[RFC] assessment reflects the degree of limitation I have
> found in the "paragraph B" mental function analysis.*

(Tr. 19) (emphasis added).  The ALJ also stated she "considered all symptoms and

the extent to which [they] could reasonably be accepted as consistent with the

objective medical evidence," in the RFC analysis.  (Tr. 20).  Inclusion of these

statements indicates the ALJ intended the discussion at Step Two to apply equally,

as if fully restated, in the RFC analysis, and that she considered all the evidence in

the record.

Reading the decision as a whole, the ALJ appropriately considered the

limiting effects of Plaintiff's mental impairments in the RFC analysis.  The ALJ

(1) discussed the non-severe impairments at Step Two, (2) stated the Step Two

analysis reflects the degree of limitation the ALJ found in Plaintiff's mental

functioning, (3) stated she "considered all symptoms and the extent to which [they]

could reasonably be accepted as consistent with the objective medical evidence,"

(4) discussed the treatment notes which contain benign notations regarding mental

impairments in the RFC analysis, and (5) expressly cited Plaintiff's denial of

mental health symptoms (specifically in the area of concentrating, persisting, and

maintaining pace) in October 2018 in the RFC analysis.  Thus, this is not a case

where the ALJ's RFC assessment is silent as to the claimant's mental limitations,

or "at best, unclear" whether the ALJ considered the functional effect of non-

severe impairments.  *See, e.g.*, *Biehl v. Comm'r of Soc. Sec.*, 2015 WL 736366, at

*21 (E.D. Mich. Feb. 20, 2015); *Revord v. Comm'r of Soc. Sec.*, 2018 WL

7051093, at *7 (E.D. Mich. Dec. 28, 2018).

It is also noteworthy that, as reflected in the discussion of the evidence on

mental impairments above, the record indeed supports the ALJ's RFC assessment

omitting any limitation for a mental impairment.  Plaintiff sometimes complained

of depression and anxiety, and sometimes reported no problems with depression

and anxiety.  The record contains a diagnosis of anxiety from Dr. Signori and

major depressive disorder from Dr. Youssef.  But no examining physician or

psychologist opined on any functional limitations resulting from a mental

impairment.  Dr. Moten, who provided a non-examining psychological opinion,

opined that Plaintiff was moderately limited in maintaining concentration,

persistence, and pace.  (Tr. 111).  As discussed above, however, the ALJ did not

err in discounting Dr. Moten's opinion.  Consequently, there is no credible opinion

in the record on mental functional limitations.  Given the evidence in the record,

the Court is not left to merely guess at why the ALJ did not include a mental

restriction in the RFC; the ALJ's discussion of the evidence makes her reasoning

clear.  Moreover, Plaintiff did not suggest what limitations should have been

included in the RFC.  He carries the burden through Step Four of proving his

impairments limit his ability to work.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469,

474 (6th Cir. 2003).

In sum, the undersigned agrees with the Commissioner that there is no reversible error in the treatment of Plaintiff's non-severe mental impairments. Further, Plaintiff's argument that the ALJ erred in relying on the vocational expert's testimony at Step Five is meritless.  Plaintiff asserts error because the hypothetical question, like the RFC, did not include any limitations related to mental functioning.  As discussed above, the failure to include mental limitations was not error.  Because the hypothetical question posed to the vocational expert on which the ALJ relied restates the RFC (Tr. 61-64), there is no error at Step Five.  *See Hatton v. Comm'r of Soc. Sec.*, 2018 WL 1278916, at *8 (E.D. Mich. Feb. 14, 2018), *report and recommendation adopted*, 2018 WL 1254948 (E.D. Mich. Mar. 12, 2018) (Where the hypothetical question to the vocational expert restated the RFC and the RFC accurately portrayed the plaintiff's limitations, there was no error at Step Five.); *Sellers v. Berryhill*, 2018 WL 989563, at *6 (E.D. Tenn. Jan. 22, 2018), *report and recommendation adopted*, 2018 WL 988084 (E.D. Tenn. Feb. 20, 2018).

## H.    Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 15), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner of Social Security's decision.

## II.     PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 16, 2021                    s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge